518 P.2d 131

**AMERICAN HONDA MOTOR CO., INC., a California corporation, and Honda Motor Co., Ltd., a Japanese corporation, Appellants,**

v.

**Ken D. SMITH, Appellee.**

**No. 1 CA–CIV 2037.**

Court of Appeals of Arizona, Division 1.

Jan. 29, 1974.

Rehearing Denied Feb. 28, 1974.

Review Granted April 2, 1974.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Thomas A. McGuire, Jr., Phoenix, for appellants.

Hughes & Hughes, P. C., by Coit I. Hughes and John C. Hughes, Phoenix, for appellee.

## OPINION

KRUCKER, Judge.

This is an appeal from a judgment entered on a jury verdict in favor of appellee, Ken D. Smith, and against appellants, American Honda Motor Company, Inc. and Honda Motor Company, Ltd.[1] in the sum of $112,000.00. Appellants, a California corporation and a Japanese corporation respectively, submit three assignments of error. They argue that (1) the trial court erred in allowing an expert witness to state opinions and conclusions based on hearsay, (2) that the trial court erred in communicating to the jury during deliberation without presence of counsel, and (3) that the jury's verdict was not based on the evidence but was the result of passion and prejudice.

Construed in favor of appellee, the pertinent facts are as follows. In July of 1963, appellee, then 16 years of age, purchased a Honda motorcycle from Parker Motor Co. On July 12, 1963, he left his home on the motorcycle to go swimming. The swimming pool was approximately one mile from his home. On the way to the pool, appellee had an accident. There were no witnesses to the accident and appellee did not remember anything regarding its cause. When the accident was discovered, appellee was lying near a rock wall on the right side of the road and his bike was on the opposite side.

The case was tried on an implied warranty theory. Appellee's witness, Derwyn Severy, an accident reconstruction expert, testified that the failure of a locking device holding two nuts on the rear wheel sprocket of the motorcycle could have caused the rear wheel to lock up thereby causing appellee to lose control of the motorcycle.

Trial of this case ended on December 2, 1971, at which time the court instructed the jury, including the following instruction on damages:

"On plaintiff's damages, if you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate for any of the following elements of damages proved by the evidence to have proximately resulted from the breach of the duties owed by the defendants to the plaintiff:

1. The nature, extent and duration of the injuries;

2. The pain, discomfort, suffering, disfigurement, disability and anxiety experienced and reasonably probable to be experienced in the future as a result of the injury; and

3. Reasonable expenses of necessary medical care, treatment and services rendered.

Whether any of these elements of damages have been proved by the evidence is for you to determine."

At 3:53 p. m., the jury left the courtroom to deliberate.

Although the record is not entirely clear, the following appears to have taken place after the jury retired and before return of the verdict. At approximately 4:30 p. m., the jury, through the bailiff, sent a written message to the court asking if their verdict was final with regard to future medical expenses. The court, without contacting counsel for either appellants or appellee, instructed the bailiff to respond "yes" to their question.

Shortly thereafter, the court informed appellants' counsel of what had transpired. The matter was discussed in chambers with appellee's counsel joining in through the telephone. It was agreed that since there had been no evidence of future medical expenses and that there had been no instruc-

---

1. By stipulation, defendant below and cross-claimant, Parker Motor Co., Inc., received judgment on its cross-claim against appel-

lants in the sum of $112,000.00 and is not part of this appeal.

tion to that effect, the response by the court through the bailiff was erroneous. It was agreed that should the court correct the error, the jury should be instructed that the previous answer was erroneous and that the entire damage instruction should be re-read.

Therefore, at 5:10 p. m., the judge and the court reporter entered the jury room. At that time the judge gave the following instructions:

"THE COURT: This is in further response to the question you had and because these matters are always confirmed with counsel, I will simply read to you the response to your question and that will be the only thing that I will discuss with you at this point.

In response to the question which you have posed, you are instructed to disregard the previously given answer and in lieu thereof are instructed that your verdict must be in accordance with the Court's instructions on damages and the same will be re-read [sic] to you at this time."

The judge then proceeded to reread the damage instruction. At 5:13 p. m., they left the jury room. Court reconvened at 5:36 p. m. and the jury returned their verdict for appellee.

■ Appellants contend that Mr. Severy, the accident reconstruction expert, conducted his examination and drew his conclusions based on out-of-court statements. In support of their arguments they refer to testimony by Mr. Severy to which they made no objection. It is well established that failure to object in the trial court precludes consideration on appeal. Tang v. Avitable, 76 Ariz. 346, 264 P.2d 835 (1953); Zakroff v. May, 8 Ariz. App. 101, 443 P.2d 916 (1968). Therefore, we decline to consider whether or not such testimony was based on hearsay.

■ Appellants' only hearsay objection was to the following:

"Q (BY MR. JOHN HUGHES) Mr. Severy, did you have related to you how the damage occurred, how the outside damage occurred to the motorcycle, Exhibit A?

MR. McGUIRE: It would be hearsay, Your Honor.

THE COURT: Well, you may answer that question.

A (BY THE WITNESS) Yes."

We find no error in allowing Mr. Severy to answer this question. It only calls for a yes or no answer, not the substance of what was related to him.

■ In support of their hearsay argument, appellants also refer to other testimony by Mr. Severy to which they objected on grounds of "no foundation." They now argue that there was error because the answers called for opinions based on hearsay. Appellants may not stand on one ground of objection in the trial court and urge another on the appellate level, Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740 (1954); Sulphur Springs Valley Elec. Coop., Inc. v. Verdugo, 14 Ariz.App. 141, 481 P.2d 511 (1971), and we decline to consider this contention.

Appellants also maintain that the trial court erred in communicating with the jury, and that such out-of-court communications concerning the case without presence of counsel, constitute reversible error. They further assert that an actual showing of prejudice is unnecessary since it is presumed.

On two previous occasions our Supreme Court has ruled on cases somewhat similar to this one. *See,* State v. Burnetts, 80 Ariz. 208, 295 P.2d 377 (1956); and Southern Pacific Railroad Co. v. Mitchell, 80 Ariz. 50, 292 P.2d 827 (1956). The *Burnetts* case was a criminal action and concerned a direct communication between the trial judge and jury. The communication took place in the jury room without a court reporter present and without notice to or presence of either counsel. A new trial was granted because such conduct was in direct violation of Rule 281, Rules of Criminal Procedure, 17 A.R.S. (1956), which required additional instructions to be

given in the courtroom after notice to the county attorney and counsel for defendant. The Supreme Court also pointed out that since this communication concerned the case and was not merely an extraneous matter, a showing of actual prejudice was unnecessary. Since *Burnetts* was a criminal action dealing with a direct communication by the judge to the jury, which was in violation of a criminal rule, it is not applicable to the instant case.

*Mitchell* was a civil suit wherein the bailiff and court reporter without authorization of the court and without the knowledge and consent of the parties entered the jury room. While there, the reporter read part of her shorthand notes regarding the forms of verdicts to be used. Although the intrusion was violative of a statute, the court upheld the denial of a new trial because there was no showing of prejudice.

In the instant case, we are concerned with two communications to the jury: one by the bailiff which was at the direction of the trial judge without the knowledge and consent of the parties, and the second by the trial judge with the knowledge and consent of the parties. Even though *Mitchell* is distinguishable, since it is a civil case, it is incumbent upon this court to follow the Mitchell approach.[2]

Rule 39(f), Rules of Civil Procedure, 16 A.R.S., provides:

> "Communication to court by jury. When the jurors desire to communicate with the court during retirement, they shall make their desire known to the officer having them in charge who shall inform the court and they may be brought into court, and through their foreman shall state to the court, either orally or in writing, what they desire to communicate."

This rule does not require notice to the parties before a judge gives or causes to be given additional instructions to the jury or answers their questions. The intention of the Rule is that such notice be given, and any communication concerning the case by a judge to a jury, either directly or through a bailiff, without notice to the parties is frowned upon. However, in the instant case we cannot say as a matter of law that it was reversible error for the trial judge to respond through the bailiff to the jury's question without notice to the parties.

Assuming arguendo that the trial judge erroneously responded to the jury's question concerning future medical expenses, the crucial question still remains—were appellants prejudiced as a result of the response? We believe not. After the judge had responded to the jury's question, he set out to correct any error he might have made. He conferred with counsel and they agreed that the jury should be instructed to disregard the previous response and that the damage instruction should be reread. Accordingly, he instructed them to disregard his previous response, and then he instructed the jury that their verdict must be in accordance with the damage instruction which he reread in its entirety. We believe that any error which might have been committed was corrected by these further instructions which were agreed upon by counsel.

Appellants have not shown how they were prejudiced by the court's conduct. They argue that it is totally unreasonable to expect the jury to have perception and training to understand the instructions and to cease deliberations on future medical expenses. Such speculation is untenable. It is contrary to what our Supreme Court stated in Citizens Utilities Co. v. Firemen's Ins. Co., 73 Ariz. 299, 240 P.2d 869 (1952):

> " 'If there is nothing to show the contrary, the appellate court will ordinarily presume in support of the verdict and

---

2. *See also*, Charm Promotions, Ltd. v. Travelers Indemnity Co., 7 Cir., 489 F.2d 1092 (1973), wherein it was held that a trial judge's ex parte communication with the jury after it has begun its deliberations is not per se reversible error but must affect the substantial rights of the parties. The court also disapproved such a communication in the absence of counsel.

judgment that the jury was composed of men of common intelligence and experience possessed of understanding and a sense of fairness and justice, who properly and fairly understood, weighed, and considered all matters which it was the duty of the jury to consider and regard in arriving at their verdict, and excluded from their consideration all matters which it would have been improper for them to have considered under the instructions and rulings of the trial court.' " 73 Ariz. at 302–303, 240 P.2d at 871.

Absent any showing of prejudice, we find nothing to constitute an abuse of discretion in denying appellants' motion for new trial.

■ Appellant's third assignment of error is that the jury verdict was the result of passion and prejudice not being based on the law or evidence. The law is well settled in Arizona that the amount of an award for damages is a question peculiarly within the province of the jury, and such award will not be overturned unless the verdict was the result of passion and prejudice. Larriva v. Widmer, 101 Ariz. 1, 415 P.2d 424 (1966). Therefore, the question is whether the verdict is so manifestly unfair, unreasonable and outrageous as to shock the conscience of the court. Young Candy & Tobacco Co. v. Montoya, 91 Ariz. 363, 372 P.2d 703 (1962).

■ There was sufficient evidence adduced whereby the jury could bring in a substantial verdict. In personal injury actions, the damages sustained by an injured party are not computable by precise mathematical formula, Garcia v. City of Tucson, 1 Ariz.App. 83, 399 P.2d 704 (1965), and the trial court has a better opportunity to judge the severity of a plaintiff's injury than an appellate court. Allen v. Devereaux, 5 Ariz.App. 323, 426 P.2d 659 (1967). Our review of the record indicates nothing that should cause the verdict and judgment to be overridden.

Finding no error in the admission of evidence, or an abuse of discretion in denying appellants' motion for new trial, the judgment is hereby affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12-120(E).