[Civil No. 4655.   Filed March 6, 1945.]

[156 Pac. (2d) 725.]

PHOENIX BAKING COMPANY, an Arizona Corporation; LESTER P. STEWART, Appellants, v. MILTON B. VAUGHT, Appellee.

Messrs. Knapp, Boyle & Thompson, for Appellants.

Messrs. Krucker, Fowler & Dodd, for Appellee.

MORGAN, J.—The plaintiff brought this action to recover for personal injuries and damages to his automobile sustained in a collision with the corporate defendant's truck, being then operated by its employee, the individual defendant. Briefly the facts are as follows:

About two o'clock on the afternoon of October 3, 1940, plaintiff was driving his Chrysler coupe north on the six-lane paved highway known as South Sixth Avenue in Tucson, to the rear of defendant Phoenix Baking Company's delivery truck, also being driven north in the center northbound traffic lane by defendant Stewart. This highway is the main traffic artery to Tucson from the south. The traffic on the road was heavy. The truck driver slowed down between street intersections in order to turn across the street to the left, to reach the bakery plant entrance on the west side of the road. In the process of turning he stopped the truck to permit southbound cars to pass. The left front wheel was apparently at or just over the center

line of the road. The truck blocked the traffic lane in which both it and plaintiff's car were traveling. The speed of both vehicles was reasonable, approximately between twenty to twenty-five miles per hour. The plaintiff's car collided with the right rear end of the truck. He suffered personal injuries in and about head, chest and knee, and sustained substantial damage to his car.

The evidence pertaining to the responsibility for the collision was conflicting. The plaintiff's testimony and evidence was to the effect that the truck driver failed to signal for the turn and stopped abruptly. The defendants' evidence, on the other hand, indicated that the driver signaled for the turn, looked into his rear view mirrors, and came to a slow stop, and that at least one car pulled out to the right to pass the truck before the collision. The cause was tried before a jury which found in plaintiff's favor a verdict of $1400, and judgment was so entered. Defendants appear here as appellants, the plaintiff as appellee. They will be referred to respectively as defendants and plaintiff.

On this appeal no claim is made that the judgment is not supported by the evidence. The assignments of error pertain only to the admissibility of testimony and to the giving and refusing of instructions. The questions raised will be considered in the order of presentation by the defendants.

■ Defendants complain that the court erred in allowing plaintiff to testify over their objection to his estimated loss of bonuses or commissions for the months of October, November and December, 1940, the period for which he was incapacitated. There is no claim or showing that the verdict was influenced by this testimony. For aught that appears other elements of damage are sufficient to sustain the judgment. It is not urged that the verdict is excessive nor that without this testimony the judgment could not be sustained.

In view of this we might well pass this assignment under the rule of harmless error in the admission of evidence. *Jacobson* v. *Laurel Canyon Min. Co.,* 27 Ariz. 546, 234 Pac. 823; *Kirkland* v. *Spriggs,* 19 Ariz. 425, 171 Pac. 992; *Arizona Superior Min. Co.* v. *Anderson,* 33 Ariz. 64, 262 Pac. 489; *Southern Lumber Co.* v. *Green,* 186 Ark. 209, 53 S. W. (2d) 229; *Trumpfeller* v. *Crandall,* 130 Me. 279, 155 Atl. 646; *Maryland Cas. Co.* v. *Sweek,* 28 Ariz. 258, 236 Pac. 720.

However, since the parties, and the plaintiff particularly, have argued the question at some length, we will consider the matter as properly for our determination. The plaintiff, a traveling salesman, in addition to a regular salary, was allowed a bonus or commission on his sales exceeding a certain quota. His regular salary was paid while he was incapacitated. Over objection of the defendants he was allowed to testify to estimated losses for bonus or commission which he fixed at approximately $200 per month. Plaintiff's testimony disclosed that he had been employed for several years as the territorial manager of a national livestock feed concern and that his average commissions in past years for the months mentioned were approximately $200 per month. He estimated his loss of commissions for the three months involved at $500. We can find no merit in defendant's contention that this testimony should have been excluded as a mere estimate or conjecture based upon conclusions concerning plaintiff's salesmanship and the state of the market. The estimate is in no way speculative, but on the contrary is based on the record of prior earnings. The testimony showed these commissions to result from the personal efforts of the plaintiff. They were earnings to the same extent as a salary would be.

The rule to be adduced from the authorities is that in a tort case, the plaintiff for personal injuries is entitled to show the amount of money he might

reasonably have earned, during the period of his incapacitation, by the pursuit of his ordinary occupation. If his earnings or a part of them are through commissions or fees for personal services, the average of such earnings may be shown as affording a basis for estimation of damages for loss of time. *Bonneau* v. *North Shore R. Co.,* 152 Cal. 406, 93 Pac. 106, 125 Am. St. Rep. 68; *Simmons* v. *Leighton,* 60 S. D. 524, 244 N. W. 883; *Strickland* v. *Davis,* 221 Ala. 247, 128 So. 233; *Chesapeake & O. Ry. Co.* v. *Shanks,* 260 Ky. 416, 86 S. W. (2d) 128; *Galveston, H. & S. A. Ry. Co.* v. *Mallott* (Tex. Civ. App.), 6 S. W. (2d) 432.

██ We think it unnecessary to consider the second assignment of error relating to testimony of a back entrance to the bakery. We believe the evidence was properly admitted. In any event, we do not see how the jury could be prejudiced by this proof. The jury knew that whether there was a back entrance or not, the driver of the truck was under no compulsion to make a left-hand turn between intersections to reach the front entrance. He could always, by turning at an intersection, drive his car on the bakery side of the street, and make a right-hand turn to gain the entrance.

The third and fourth assignments present the principal issue on this appeal. They will be considered together. The defendants urge that the court committed error in refusing to give their instruction number three, as requested, and in giving of the "extra precaution" rule announced by this court in *McIver* v. *Allen,* 33 Ariz. 28, 262 Pac. 5. We quote defendants' requested instruction:

"You are further instructed that there is no statute in the State nor any rule of law prohibiting the driver of a truck from turning from the street, either to the left or to the right, to enter private premises, whether such entry is made in the middle of the block or at an intersection. The only requirement of law in such case

is that a driver use ordinary care under all circumstances, which means such care as an ordinary prudent person would exercise under like or similar circumstances in making such turn."

The court struck out from line two the phrase "nor any rule of law" and the latter part of the instruction beginning with the words "The only requirement." The instruction, as modified, was given by the trial judge, following which he read to the jury Section 66–111, Arizona Code Annotated 1939. This section as applicable here provides:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety; . . . whenever the operation of any other vehicle may be affected by such movement he shall give a signal plainly visible to the driver of such motor vehicle of the intention to make such movement. Such signal shall be given either by the hand and arm or by an approved mechanical or electrical signal device. . . .

"Whenever the signal is given by the hand and arm, the driver shall indicate his intention to turn to the left by extending his hand and arm horizontally from and beyond the left side of the vehicle; . . . . The signal to the right or left, whether given by the hand and arm or by an approved mechanical or electrical device, shall be given continuously during the last fifty (50) feet before turning."

The jury had previously been instructed in the language of the McIver decision:

"You are instructed that the danger of left-hand turns on much traveled highways between intersections is so great that they should not be attempted without the exercise of extra precaution. Left-hand turns by automobiles between intersections on much traveled highways are less frequent than at crossings, and naturally are not anticipated to the same extent; . . . "

It is the position of defendants that since the adoption of Section 66–111, *supra,* the law of the McIver case has been superseded. They say that the "extra

precaution'' rule has no application and that the defendants' duties are to be measured entirely by the provisions of the statute. They assert that although the jury might well have believed that even though Stewart fully complied with the statute, he should have performed some undefined act or exercised some undefined caution or care beyond that required of him by the act. In other words, that the term ''extra precaution'' as used required the driver to insure the safety of other cars in his vicinity, since the jury had already been instructed through the reading of the statute that the defendant must ''see whether the turn could be made in safety.'' They further contend that the care required of a driver in making a left-hand turn is only the ordinary care which an ordinarily prudent person would exercise under like or similar circumstances in making such a turn.

The McIver rule was announced in 1927. The decision has been cited widely both in cases and in texts and has been often approved. We find no criticism of the rule. We cannot agree with the suggestion that the rule of the McIver case has become obsolete by the adoption of the present law requiring a driver to see that a turn can be made in safety. Under statutes similar to ours, courts generally hold that where, as here, a driver makes a left-hand turn to cross a busy highway between intersections, he is held to the exercise of ''high degree of care,'' extraordinary care and caution,'' ''far more vigilance,'' than the rule of ''due care'' would demand under other circumstances. *Glick* v. *Ropes,* 18 Wash. (2d) 260, 138 Pac. (2d) 858; *Onkels* v. *Stogsdill,* 151 Wash. 194, 275 Pac. 692; *Caesar* v. *Phillips Petroleum Co.,* 187 Okl. 559, 104 Pac. (2d) 429; *Esponette* v. *Wiseman,* 130 Me. 297, 155 Atl. 650; *L'Esperance* v. *Sherburne,* 85 N. H. 103, 155 Atl. 203; *Young* v. *Cerrato,* 2 Cal. App. (2d) 421, 37 Pac. (2d) 1063; *Black* v. *Stith,* 164 Or. 117, 100 Pac. (2d) 485.

■■ We agree with the cases cited by defendants from California, Oregon, and some other jurisdictions, that the statute under consideration does not require a driver, before he makes a left-hand turn, to become "an insurer of others," nor does it require "absolute safety." The "extra precaution" rule of the McIver case does not impose such burdens. It seems obvious to us that the extra precaution rule does not add anything to the requirements imposed by the statute on a driver making a left-hand turn between intersections on a much traveled street under the circumstances shown here. The statute itself by its terms imposes a duty of more than ordinary care. We think the "extra precaution" rule is a moderate construction of the law. It infers a duty on the driver of a care less than absolute, perhaps even less than "extraordinary care," adopted as the rule in Washington. It seems to us that the term would be understood to mean something more than ordinary but less than extraordinary care. We do not believe that the extra precaution instruction was or could be misleading to the jury.

■■ When a driver on a road where traffic is heavy makes a left-hand turn between intersections common sense requires that he should exercise more than ordinary care. This has been the law of Arizona since the McIver decision. The trial court, therefore, properly modified defendants' instruction three by eliminating the latter portion thereof. It is true that the driver was only required to use such care in the circumstances as an ordinarily prudent person would exercise in the same situation in making such turn. But it must be borne in mind that such an ordinarily prudent person would exercise a higher degree of care than ordinary care. The instruction offered provided, "The only requirement of law in such case is that a driver use ordinary care . . . ."

Since in our view the law of the McIver case is a correct statement there can be no objection to the court

reading the excerpt therefrom as a part of his instructions.

We find no error in the court's refusal to give defendants' requested instructions set out in the remaining assignments of error. They were either not justified by the evidence and the facts in the case, or were covered by other instructions given by the trial court. This court has repeatedly passed on the questions here raised. No purpose would be served by again announcing the rules.

We find no reversible error.

The judgment of the lower court is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.